**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

CRAIG BISHOP,                          :
                                       :   Civil Action No. 06-5844 (RBK)
            Petitioner,                :
                                       :
        v.                             :   **OPINION**
                                       :
STATE OF NEW JERSEY, et al.,           :
                                       :
            Respondents.               :


**APPEARANCES:**

    CRAIG BISHOP, Petitioner pro se
    #500542
    South Woods State Prison
    215 Burlington Road South
    Bridgeton, New Jersey 08302

    PETER J. GALLAGHER, ESQ.
    Atlantic County Prosecutor's Office
    4997 Unami Boulevard. P.O. Box 2002
    Mays Landing, New Jersey 08330
    Counsel for Respondents

**KUGLER**, District Judge

Petitioner Craig Bishop, a prisoner currently confined at South Woods State Prison in Bridgeton, New Jersey, has submitted a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The named respondents are Prison Administrator Kathryn MacFarland, the New Jersey Attorney General, and the State of New Jersey.

For the reasons stated herein, the Petition must be denied.

I.   BACKGROUND

A.  Statement of Facts

The facts of the crimes are set forth in the state court record, and this Court incorporates the statement of facts from both the State and Petitioner's briefs on direct appeal (Ra97; Ra161-162).[1]

On June 13, 1998, Detective Sam Dickson of the Atlantic City Police Department was conducting surveillance in the area of New York and Pacific Avenues in Atlantic City, well known for its high volume of drug crimes and arrests. Detective Dickson was working with Detective DePaul. (Ra137, Atlantic City Police Department Supplementary Investigation Report). At about 12:15 a.m., Detective Dickson, using binoculars, observed four individuals walk into a parking lot on New York Avenue. Two members of the group walked ahead, and the other two stopped and engaged in what appeared to Detective Dickson as a drug transaction. Detective Dickson observed one individual, later identified as Petitioner, put his hand into the rear waistband area of his pants and remove a small object. Petitioner handed it to the other individual, who in exchange, handed paper currency to Petitioner. (Ra137).

---

[1] "Ra" denotes the state court record provided by the Respondents in answer to the petition.

At this point, Detective Dickson contacted Detective DePaul, giving him a description of the suspects, their location, and what Detective Dickson had observed.  Detective DePaul, with a back-up Officer Dragovits, stopped and searched Petitioner and the other person.  The officers observed a bulge in the rear area of Petitioner's pants, and found that the bulge was caused by a zip-lock baggie containing 27 pink-tainted smaller baggies, each containing a white rocky substance.  The substance field tested positive for cocaine.  (Ra137-138).  The police also found $55.00 on Petitioner, and a search of the other suspect disclosed a pink-tinted baggie, identical to the 27 baggies found on Petitioner.  This baggie also contained a white rocky substance that tested positive for cocaine.  On the ground near where the two suspects had been stopped, the police found two blue-tinted plastic zip-lock baggies, each containing greenish vegetatian believed to be marijuana.  The police suspected that the baggies of marijuana were dropped by someone in the group, but the officers had not observed that event.  (Ra138).

On August 31, 1998, at his plea hearing, Petitioner admitted possessing 27 bags of cocaine on the night in question and claimed that he was on his way to a party and had intended to share the bags with others at the party.  (1T 15:4-17).[2]

---

[2] Respondents also provided state court transcripts as follows:

B. <u>Procedural History</u>

In the summer of 1998, the Atlantic County Grand Jury indicted Petitioner on three counts of drug offenses: Count One, third degree possession of cocaine, contrary to <u>N.J.S.A.</u> 2C:35-10a(1); Count Two, third degree possession of cocaine with the intent to distribute, contrary to <u>N.J.S.A.</u> 2C:35-5a(1), 5b(3); and Count Three, third degree distribution of cocaine, contrary to <u>N.J.S.A.</u> 2C:35-5a(1), 5b(3). (Ra111-115).

On August 31, 1998, Petitioner appeared before the Honorable Albert Garofolo, J.S.C., and pleaded guilty to Count Two of the indictment (possession of cocaine with the intent to distribute), pursuant to a plea agreement with the State of New Jersey. The State had agreed to recommend the remaining charges of the indictment be dismissed, and that Petitioner's sentence on Count Two would not exceed seven years imprisonment with a 42-month parole disqualifier. (1T 11:24-14:21). Sentencing was scheduled for November 13, 1998. (1T 17:10-11).

Petitioner failed to appear for sentencing as directed and became a fugitive. He was arrested in 2004, six years after entry of his guilty plea. (2T 16:15-16). Before his sentencing on September 24, 2004, Petitioner filed a motion to withdraw his

---

    1T   August 31, 1998 Plea Transcript (Ra1-19)
    2T   September 24, 2004 Transcript of Motion to Withdraw Plea and Sentence (Ra32-72)
    3T   October 17, 2005 Transcript of Excessive Sentencing Oral Arguments on direct appeal (Ra78-91).

guilty plea.  Judge Garofolo heard Petitioner's motion on September 24, 2004.  Petitioner's counsel also objected to the imposition of an extended term because the State had not filed a motion seeking an extended term, pursuant to New Jersey Court Rule 3:21-4(e) and N.J.S.A. 2C:43-6f.  (2T 36:5-18).  Judge Garofolo denied the motion to withdraw the guilty plea, overruled defense counsel's objection to imposition of the extended term, and sentenced Petitioner to an extended term of seven years in prison with 3½ years parole ineligibility.  (2T 29:24-32:20, 36:25-40:18).

Petitioner filed a direct appeal before the Superior Court of New Jersey, Appellate Division.  The appeal was placed on the Sentencing Oral Argument calendar and was heard on October 17, 2005.  In an Order filed on October 24, 2005, the Appellate Division affirmed the judgment of the trial court, accepting the guilty plea and finding that the sentence was not manifestly excessive or unduly punitive.  However, the Appellate Division directed counsel to submit a brief on the issue of the validity of the extended term sentence as imposed.  (Ra92).

Both Petitioner and the State submitted briefs as directed on appeal relating to the imposition of an extended term sentence.  On May 2, 2006, the Appellate Division affirmed the extended term sentence.  (Ra203-207).  Petitioner then filed a letter petition for certification with the Supreme Court of New

Jersey.  (Ra208-211).  The Supreme Court of New Jersey denied certification by Order filed on July 19, 2006 (Ra220).

Petitioner filed this petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, on or about November 20, 2006.[3] Following this Court's issuance of a notice pursuant to Mason v. Meyers, 208 F.3d 414 (3d Cir. 2000), Petitioner submitted an amendment to his Petition on January 3, 2007.  Respondents answered the petition on February 16, 2007.

## II.  CLAIMS PRESENTED

Petitioner asserts the following claims in his Petition and amended Petition:

1.  Petitioner's conviction was obtained by use of evidence gained pursuant to an unconstitutional search and seizure, in violation of the Fourth Amendment.

2.  Petitioner was given an excessive sentence.

---

[3] Pursuant to the "prison mailbox rule," a habeas petition is deemed filed on the date the prisoner delivers it to prison officials for mailing, not on the date the petition is ultimately filed with the court.  See Houston v. Lack, 487 U.S. 266, 270-71 (1988); see also Burns v. Morton, 134 F.3d 109, 112-13 (3d Cir. 1998) (applying prison mailbox rule set forth in Houston, which dealt with filing of an appeal, to a pro se prisoner's filing of a habeas petition).  Although the Court is unable to determine from the face of the petition the exact date that Petitioner handed his petition to prison officials for mailing, Petitioner signed the petition on November 20, 2006.  See Henderson v. Frank, 155 F.3d 159, 163-64 (3d Cir. 1998) (using date prisoner signed petition as date he handed it to prison officials for purposes of calculating timeliness of habeas petition). Accordingly, the Court finds that November 20, 2006, rather than December 6, 2006 (the date the petition was received in the Clerk's office), was the date this petition was filed for purposes of calculating the timeliness of the petition.

6

3. Petitioner was convicted by use of evidence obtained pursuant to an unlawful arrest, in violation of the Fourth Amendment.

4. Petitioner received ineffective assistance of trial counsel, in violation of the Sixth Amendment.

Respondents argue that the petition should be dismissed because several of the claims asserted by Petitioner have not been exhausted in state court. Respondents also contend that the Petitioner's claims are without merit and do not entitle him to federal habeas relief.

Petitioner has not replied to Respondents' answer.

### III.  ANALYSIS

A state prisoner applying for a writ of habeas corpus in federal court must first "exhaust[] the remedies available in the courts of the State," unless "there is an absence of available State corrective process[] or ... circumstances exist that render such process ineffective ... ."  28 U.S.C. § 2254(b)(1).  See also Rose v. Lundy, 455 U.S. 509, 515 (1982); Lambert v. Blackwell, 134 F.3d 506, 513 (3d Cir. 1997), cert. denied, 532 U.S. 919 (2001) (finding that "Supreme Court precedent and the AEDPA mandate that prior to determining the merits of [a] petition, [a court] must consider whether [petitioner] is

required to present [his or her] unexhausted claims to the [state's] courts").[4]

A petitioner exhausts state remedies by presenting his federal constitutional claims to each level of the state courts empowered to hear those claims, either on direct appeal or in collateral post-conviction proceedings.  See, e.g., O'Sullivan v. Boerckel, 526 U.S. 838, 847 (1999) ("requiring state prisoners [in order to fully exhaust their claims] to file petitions for discretionary review when that review is part of the ordinary appellate review procedure in the State"); Lambert v. Blackwell, 134 F.3d 506, 513 (3d Cir. 1997) (collateral attack in state court is not required if the petitioner's claim has been considered on direct appeal); 28 U.S.C. § 2254(c) ("An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.")  Once a petitioner's federal claims have been fairly presented to the state's highest court, the exhaustion requirement is satisfied.

---

[4] Although a petition for writ of habeas corpus may not be granted if the Petitioner has failed to exhaust his remedies in state court, a petition may be denied on the merits notwithstanding the petitioner's failure to exhaust his state court remedies.  See 28 U.S.C. § 2254(b)(2); Lambert v. Blackwell, 387 F.3d 210, 260 n.42 (3d Cir. 2004); Lewis v. Pinchak, 348 F.3d 355, 357 (3d Cir. 2003).

Castille v. Peoples, 489 U.S. 346, 350 (1989); Picard v. Connor, 404 U.S. 270, 275 (1971).

The petitioner generally bears the burden to prove all facts establishing exhaustion. Toulson v. Beyer, 987 F.2d 984, 987 (3d Cir. 1993). This means that the claims heard by the state courts must be the "substantial equivalent" of the claims asserted in the federal habeas petition. Picard, 404 U.S. at 275. Reliance on the same constitutional provision is not sufficient; the legal theory and factual basis must also be the same. Id. at 277.

Moreover, the exhaustion doctrine is a "total" exhaustion rule. That is, "a district court must dismiss habeas petitions containing both unexhausted and exhausted claims [('mixed' petitions)]." Lundy, 455 U.S. at 522. At the time Lundy was decided, there was no statute of limitations on the filing of federal habeas petitions. The enactment in 1996 of a one-year limitations period for § 2254 habeas petitions,[5] however, "'has altered the context in which the choice of mechanisms for handling mixed petitions is to be made.'" Crews v. Horn, 360 F.3d 146, 151 (3d Cir. 2004) (quoting Zarvela v. Artuz, 254 F.3d 374, 379 (2d Cir.), cert. denied, 534 U.S. 1015 (2001)). Because of the one-year limitations period, dismissal of a timely-filed mixed petition may forever bar a petitioner from returning to federal court. "Staying a habeas petition pending exhaustion of

---

[5] See 28 U.S.C. § 2244(d).

state remedies is a permissible and effective way to avoid barring from federal court a petitioner who timely files a mixed petition." Crews, 360 F.3d at 151.  Indeed, the Court of Appeals for the Third Circuit has held that "when an outright dismissal could jeopardize the timeliness of a collateral attack, a stay is the only appropriate course of action." Crews, 360 F.3d at 154.

The Supreme Court has somewhat limited the stay-and-abeyance rule announced in Crews.

> [S]tay and abeyance should be available only in limited circumstances.  Because granting a stay effectively excuses a petitioner's failure to present his claims first to the state courts, stay and abeyance is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court.  Moreover, even if a petitioner had good cause for that failure, the district court would abuse its discretion if it were to grant him a stay when his unexhausted claims are plainly meritless.
>
> ...
>
> On the other hand, it likely would be an abuse of discretion for a district court to deny a stay and to dismiss a mixed petition if the petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory litigation tactics.  In such circumstances, the district court should stay, rather than dismiss, the mixed petition.  ...  For the same reason, if a petitioner presents a district court with a mixed petition and the court determines that stay and abeyance is inappropriate, the court should allow the petitioner to delete the unexhausted claims and to proceed with the exhausted claims if dismissal of the entire petition would unreasonably impair the petitioner's right to obtain federal relief.

Rhines v. Weber, 544 U.S. 269, 277-78 (2005) (citations omitted).

Even where stay and abeyance is appropriate, the district court's discretion in structuring the stay is limited by the timeliness concerns reflected in the one-year statute of limitations.  "Thus, district courts should place reasonable time limits on a petitioner's trip to state court and back."  Id. at 278.  See also Crews, 360 F.3d at 154 ("If a habeas petition is stayed, the petitioner should be given a reasonable interval, normally 30 days, to file his application for state post-conviction relief, and another reasonable interval after the denial of that relief to return to federal court.  If a petitioner fails to meet either time-limit, the stay should be vacated nunc pro tunc.") (citations omitted).

Here, Respondents argue that Petitioner has failed to exhaust three of the four claims presented in this petition.  The unexhausted claims are Petitioner's Fourth Amendment claims alleging that his conviction was obtained by use of evidence gained pursuant to an unconstitutional search and seizure and an unlawful arrest, and his Sixth Amendment ineffective assistance of counsel claim.[6]  A review of the state court record, as provided by the Respondents, confirms that these three claims were never presented in any form for state court review.

---

[6] The Sixth Amendment claim alleges that counsel was ineffective because he failed to make an appropriate motion to suppress based on the purported Fourth Amendment violations asserted by Petitioner.  Petitioner also contends that his counsel was ineffective in advising Petitioner to take the extended term plea agreement.

11

Moreover, Petitioner has not established that he had "good cause" for his failure to exhaust these unexhausted claims.

Few courts have provided guidance as to what constitutes "good cause" for failing to exhaust a claim in state court within the meaning of Rhines.  In Pace v. DiGuglielmo, 544 U.S. 408 (2005), the Supreme Court stated, "A petitioner's reasonable confusion about whether a state filing would be timely will ordinarily constitute 'good cause' for him to file in federal court.'"  Here in the Third Circuit, the Court of Appeals has emphasized the need to be mindful of Justice Stevens's concurrence in Rhines, which cautions that "'good cause' for failing to exhaust state remedies more promptly ... is not intended to impose the sort of strict and inflexible requirement that would 'trap the unwary pro se prisoner,'" but has not otherwise defined the standard to be applied.  Ellison v. Rogers, 2007 WL 1299120, *3 (3d Cir. May 4, 2007) (quoting Rhines, 544 U.S. at 279 (Stevens, J., concurring)).  Some lower federal courts have adopted the standard for "cause" applicable to procedural defaults, which requires that some "objective factor external to the defense" made it impossible to bring the claim earlier in state court proceedings, as required by Coleman v. Thompson, 501 U.S. 722, 754 (1991) (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986)).  See, e.g., Tullis v. Kontah, 2007 WL 915197 (S.D. Ohio) (collecting cases).  In Jackson v. Roe, the

12

Court of Appeals for the Ninth Circuit rejected the contention that <u>Rhines</u> requires a showing of "extraordinary circumstances," but did not otherwise provide guidance.  At the opposite extreme, one court simply requires "a prima facie case that a justifiable, legitimate reason exists which warrants the delay of federal proceedings while exhaustion occurs."  <u>See</u> <u>Brisco v. Scribner</u>, 2005 WL 3500499 (E.D. Cal. Dec. 21, 2005) (Report and Recommendation), <u>Report and Recommendation adopted</u>, 2006 WL 568224 (E.D. Cal. March 3, 2006).

Here, under even the most generous of standards, Petitioner has failed to establish "good cause" for his failure to exhaust his state remedies.  At the conclusion of his direct appeal on the sentencing issues, Petitioner proceeded directly to federal court.  He never attempted to file a petition for post-conviction relief in state court with respect to his ineffective assistance of counsel claims or Fourth Amendment claims.  Petitioner was well within the one year statute of limitations when he filed this petition.  <u>See</u> 28 U.S.C. § 2244(d)(1)(A).  His judgment did not become final in this matter until October 19, 2006, and therefore, Petitioner has time remaining on the one-year limitations period, which expires on October 19, 2007.

Moreover, Petitioner does not appear to be procedurally barred from bringing his unexhausted claim for state collateral review.  <u>See</u> New Jersey Court Rules 3:22-1 through 4.

13

Therefore, where Petitioner has not shown good cause for failing to exhaust his constitutional claims in state court, and there is ample time remaining on Petitioner's one-year limitations period, if he should decide to pursue his unexhausted claims in state court, this Court finds that it would be an abuse of discretion to grant a stay of the petition under these circumstances.  See Rhines, 544 U.S. at 276-78.  Accordingly, this mixed petition will be dismissed for failure to exhaust state court remedies.

## IV.   CONCLUSION

For the reasons set forth above, the habeas petition will be dismissed without prejudice for failure to exhaust state court remedies.  An appropriate order follows.

S/Robert B. Kugler
ROBERT B. KUGLER
United States District Judge

Dated: 8/15/07